Dear Mrs. Ashford:
This opinion letter is issued in response to your request to this office for an opinion dated August 16, 1978. In this request, you asked the following questions of law:
 "Federal Pretreatment Regulations published under 40 C.F.R. Part 128 in the Federal Register, Volume 43, No. 123 — Monday, June 26, 1978. Section 403.10(b)(1) requires that the State submit a statement by the State Attorney General indicating whether the State has adequate authority to conduct pretreatment program, as outlined in the Federal Regulation. A copy of the Federal Regulation is attached for reference."
The regulation referred to in your question is rather lengthy, however, the applicable legal authorities are contained in Section 403.10(f)(1) entitled "Legal Authority". That section indicates that the state must have at least the following authority to enable its Director to:
 "(i) Incorporate POTW [Publicly Owned Treatment Works] Pretreatment Program conditions into permits issued to POTW's; require compliance by POTW's with these incorporated permit conditions; and require compliance by industrial Users with Pretreatment Standards.
 "(ii) Ensure continuing compliance by POTW's with pretreatment conditions incorporated into the POTW Permit through review of monitoring reports submitted to the Director by the POTW in accordance with Section 403.12 and ensure continuing compliance by Industrial Users with Pretreatment Standards through the review of self-monitoring reports submitted to the POTW or to the director by the Industrial Users in accordance with Section 403.12.
 "(iii) Carry out inspection, surveillance and monitoring procedures which will determine, independent of information supplied by the POTW, compliance or noncompliance by the POTW with pretreatment conditions incorporated into the POTW Permit; and carry out inspection, surveillance and monitoring procedures which will determine, independent of information supplied by the Industrial User, whether the Industrial User is in compliance with Pretreatment Standards.
 "(iv) Seek civil and criminal penalties, and injunctive relief, for noncompliance by the POTW with pretreatment conditions incorporated into the POTW Permit and for noncompliance with Pretreatment Standards by Industrial Users as set forth in Section 403.8(f) (1)(vi). The Director shall have authority to seek judicial relief for noncompliance by Industrial Users even when the POTW has acted to seek relief (e.g., if the POTW has sought a penalty which the Director finds to be insufficient).
 "[Comment: However, in most cases the Director's authority to seek judicial relief will be exercised where there is no POTW Pretreatment Program or where the POTW has failed to act.]
 "(v) Approve and deny requests for approval of POTW Pretreatment Programs submitted by a POTW to the Director.
 "(vi) Deny and recommend approval of (but not approve) requests for Fundamentally Different Factors variances submitted by Industrial Users in accordance with the criteria and procedures set forth in Section 403.13.
 "(vii) Approve and deny requests for authority to modify categorical Pretreatment Standards to reflect removals achieved by the POTW in accordance with the criteria and procedures set forth in Sections 403.7, 403.9 and 403.11."
"Director" is defined in § 403.2(e) of the federal regulations as the chief administrative officer of the state water pollution control agency. Section 204.136, RSMo (Supp. 1975) designates the Missouri Clean Water Commission as water pollution agency of the state.
It appears that the state does have the requisite authority.
The first inquiry concerns whether there is authority to enable the Director to:
 "Incorporate POTW Pretreatment Program conditions into permits issued to POTW's; require compliance by POTW's with these incorporated permit conditions; and require compliance by Industrial Users with Pretreatment Standards."
Initially, it should be observed that any enforceable provision of any "pretreatment program" anticipated in this federal regulation is to be accomplished, as indicated in Sections 403.8 (c) and 403.10(f)(1) of that regulation, via conditions concerning pretreatment which would be adopted in the permit issued to the POTW (Publicly Owned Treatment Works). Therefore, the inquiry into (i) in this opinion deals primarily with the authority of the state through its Missouri Clean Water Law, to adopt and enforce permits with the types of conditions referred to in the federal regulation and which are discussed hereinafter.
The first section from the Clean Water Law which applies is Section 204.026(13). This concerns the authority to incorporate pretreatment program conditions into permits and provides that the Clean Water Commission has authority to issue permits to control, prevent or abate water pollution with such conditions which may be necessary to ensure compliance with pretreatment effluent standards, and all requirements as established by any Federal Water Pollution Control Act.
The authority to insert the necessary conditions into a permit is also found in Section 204.051.3 which provides that the permit ". . . shall issue . . . with such conditions as he deems necessary to ensure that the source will meet the requirements of . . . any federal water pollution control act as it applies to sources in this state."
This specific authority is buttressed by the provisions of Section 204.026(15) where the Clean Water Commission is granted all incidental powers necessary to ensure that the state complies with any Federal Water Pollution Control Act and retains maximum control thereunder. Thus there is authority to incorporate the necessary pretreatment conditions into the permits issued to the POTW's.
With regard to requiring compliance by POTW's with permit conditions, Section 204.051.1(3) of the Missouri Clean Water Law provides that it is unlawful for any person to violate permit provisions. POTW's must obtain permits to comply with Section 204.051.2, where it is provided that it is unlawful for any person to, inter alia, build, operate or use any water contaminant or point source in the state, which would include a publicly owned treatment works within its definition, without first obtaining a permit pursuant to the Clean Water Law.
Section 204.076 provides that the Clean Water Commission may institute litigation to enjoin or seek penalties for the violation of any of its permits.
With regard to the third part of this first inquiry, requiring compliance by industrial users with pretreatment standards, the Commission in Section 204.026(16) is authorized to adopt pretreatment regulations as required to ensure compliance with pretreatment effluent standards and all requirements established by any federal water pollution control act for point sources in the state. Pretreatment regulations are defined in Section 204.016(8) of the Missouri Clean Water Law as:
 "[L]imitations on the introduction of pollutants or water contaminants into publicly owned treatment works or facilities which the commission determines are not susceptible to treatment by such works or facilities or which would interfere with their operations, . . ."
Authority to adopt pretreatment regulations is further spelled out in Section 204.041 where it is stated that:
 "[T]he commission shall adopt . . . pretreatment . . . regulations which require the use of effective treatment facilities, or other methods . . . to limit or prevent introduction of water contaminants into publicly owned treatment works or facilities as required under any federal water pollution control act, . . ."
These pretreatment regulations, which by definition apply to anyone discharging into publicly owned treatment works, are also subject to the provisions in Section 204.051.1(3) which makes it unlawful to violate any pretreatment regulation, and those in Section 204.076.1 which make it unlawful for any person to violate any regulation adopted by the Commission and further provide that such violation may be subject to injunctive relief and penalties up to $10,000 per day for such violations.
Thus, there is authority to require compliance by industrial users with pretreatment standards.
With regard to the second inquiry in your question, authority to:
 "(ii) Ensure continuing compliance by POTW's with pretreatment conditions incorporated in the POTW Permit through review of monitoring reports submitted to the Director by the POTW in accordance with Section 403.12 and ensure continuing compliance by Industrial Users with Pretreatment Standards through review of self-monitoring reports submitted to the POTW or to the director by the Industrial Users in accordance with Section 403.12",
the same authority with regard to enforcing and establishing pretreatment standards or conditions, whether by permit or regulation, would obviously apply.
Section 204.026(23) of the Missouri Clean Water Law authorizes the Commission to require persons either owning or engaged in operations which do or may introduce water contaminants or pollutants into publicly owned treatment works to conduct any monitoring necessary to establish and maintain records and file reports concerning certain specified items and also ". . . any other information required by any federal water pollution control act. . . ." That section further provides that:
 "The commission shall develop and adopt such procedures for inspection, investigation, testing, sampling, monitoring and entry respecting water contaminant and point sources as may be required for approval of such a program under any federal water pollution control act;"
This section, 204.026(23), applies to the discharge of water contaminants from publicly owned treatment works as well as to operations which introduce water contaminants or pollutants into those publicly owned treatment works. Therefore, its provisions requiring monitoring and reporting apply both to the publicly owned treatment works and also to the industrial users discharging to those publicly owned treatment works.
Further, Section 204.051.12 provides that the publicly owned treatment works must notify the Clean Water Commission of any new introductions of water contaminants or pollutants into such works, changes in volume or character of such contaminants or pollutants, and of the quality and quantity of the effluents being introduced or to be introduced into the works and the impact of such introductions on the effluent to be released from the publicly owned treatment works.
Thus there is the requisite authority to satisfy this second inquiry.
The third area of concern within your question was whether there is authority to:
 "Carry out inspection, surveillance and monitoring procedures which will determine, independent of information supplied by the POTW, compliance or noncompliance by the POTW with pretreatment conditions incorporated into the POTW Permit; and carry out inspection, surveillance and monitoring procedures which will determine, independent of information supplied by the Industrial User, whether the Industrial User is in compliance with Pretreatment Standards."
It appears that adequate authority for this requirement is contained in Section 204.026(20) of the Missouri Clean Water Law wherein the Commission is given authority to enter either private or public property for any purpose required by any Federal Water Pollution Control Act or the Missouri Clean Water Law to investigate records which are required to be kept under that law, or any condition which the Commission has probable cause to believe to be a water contaminant source or the site of any suspected violation of any regulations, standards, limitations or permits issued under the Missouri Clean Water Law. By this section, the Commission then has the authority to look behind the records which must be kept in compliance with Section 204.026(23) referenced above.
Further authority for investigations is found in Section204.056.1 where there is authority for investigation of alleged violations of any standards, limitations, regulations or permit conditions. Other authority is found in 204.026(5) wherein the Clean Water Commission is given authority to conduct studies or investigations relating to water pollution and its causes, prevention, control and abatement as may be necessary to discharge its duties under the Missouri Clean Water Law.
Therefore there is the authority necessary to satisfy this third inquiry.
The fourth area for discussion under your questions concerns whether the Director has authority to:
 "Seek civil and criminal penalties, and injunctive relief, for noncompliance by the POTW with pretreatment conditions incorporated into the POTW Permit and for noncompliance with Pretreatment Standards by Industrial Users as set forth in Section 403.8(f) (1)(vi). The Director shall have authority to seek judicial relief for noncompliance by Industrial Users even when the POTW has acted to seek relief (e.g., if the POTW has sought a penalty which the Director finds to be insufficient)."
The answer to this inquiry incorporates the discussion above concerning the authority to issue permits with pretreatment conditions, adopt pretreatment regulations and effluent regulations, and to enforce them. Section 204.076, providing criminal and civil penalties and injunctive relief, addresses violations of all regulations passed by the Clean Water Commission, whether pretreatment or effluent regulations, and also permit conditions. Therefore, penalties and injunctive relief are available where violations of the permit conditions of a POTW permit or effluent regulations are involved, and also where violations of the pretreatment regulations by the industrial users discharging to POTW's are concerned. There is no indication in the Clean Water Law or elsewhere in the Missouri statutes that the state would be preempted from pursuing criminal or civil penalties or injunctive relief by any action filed by a POTW. Therefore, the Director would have authority to pursue further judicial relief even though a POTW may have already attempted to seek judicial relief. Any discussion of the authority of the POTW's to seek such judicial relief is, of course, beyond the scope of this opinion.
The fifth area for consideration within your question concerns whether the Director has authority to:
 "Approve and deny requests for approval of POTW Pretreatment Programs submitted by a POTW to the Director."
The POTW pretreatment program is a unique creature of the federal regulations. It seems clear that, since those regulations also call on the states to perform this general function, the authority for such activity would be contained in Section204.026(3) which provides that the Clean Water Commission will have authority to:
 Advise, consult, and cooperate with other agencies of the state, the federal government, other states and interstate agencies, and with affected groups, political subdivisions and industries in furtherance of the purposes of sections 204.006 to 204.141. [The Clean Water Law]"
Under Section 204.136, the Commission is designated as ". . . the water pollution agency of the state for all purposes of any Federal Water Pollution Control Act" and may:
 "(1) Take all necessary or appropriate action to obtain for the state the benefits of any federal act, or to obtain federal approval of any state water pollution control program;
* * *
 "(4) Participate through its authorized representatives in proceedings under any federal act;"
Section 403.8(c) of the Federal Regulations provides that the pretreatment program conditions are to be incorporated within permit conditions. The authority for the Missouri Clean Water Commission to include such conditions in permits is discussed at some length above. Therefore, since the Commission has authority to incorporate pretreatment conditions in its permits, where state powers are concerned there is clearly authority for it to approve or deny the program as it is incorporated in the permit conditions. Where federal powers are involved, the Clean Water Commission action to approve or deny a program for a federal agency, based on federal regulations, is at the request of the federal agency which adopted these regulations. This is authorized from the state's standpoint by the statutes cited above authorizing the Commission to work with the federal government and its agencies.
This authority for disapproval or denial is reinforced by the provisions of 204.026(15) concerning incidental powers necessary to assure that the State of Missouri complies with any Federal Water Pollution Control Act. There is the authority to satisfy the fifth inquiry.
The sixth inquiry involved in your question concerns whether the Director has authority to:
 "(vi) Deny and recommend approval of (but not approve) requests for Fundamentally Different Factors variances submitted by Industrial Users in accordance with the criteria and procedures set forth in Section 403(13)."
This procedure for a variance is explained in Section 403.13 (c) of the Federal Regulations. It is a variance from categorical pretreatment standards set by the Environmental Protection Agency to specify quantities or concentrations of pollutants, to be established by separate federal regulations, which may be introduced into a POTW by existing or new industrial users. These variances are to be granted from federally established pretreatment standards if the factors considered by EPA in establishing the pretreatment standard were fundamentally different from those relating to the industrial user requesting a variance.
Just as noted with the inquiry immediately above, this involves variances created by the Federal Regulations. The Commission would be acting upon the request of the federal agency which adopted the regulation providing for the variances. Denial of any variance request would not affect the status quo of any industrial user with respect to the Missouri Clean Water Law, but only as to federal regulations. Approval would be nothing more than a recommendation. Therefore, authority for such denial or recommended approval can be found under the sections discussed above providing authority for the Clean Water Commission to cooperate and work with federal agencies and take actions necessary to meet the requirements of the Federal Water Pollution Control Act.
With respect to the requirements of the Missouri law, the Missouri Clean Water Commission has been granted specific authority to grant individual variances in Section 204.061. The variances referred to there are from the requirements of the Missouri Clean Water Law, while those referred to in the Federal Regulation are requirements of the Federal law and regulations. However, the concept of approving or denying variances is a recognized power of the Missouri Clean Water Commission and it has the authority to grant variances from requirement of the Missouri law.
The final area of concern in your question is whether the Director has authority to:
 "Approve and deny requests for authority to modify categorical Pretreatment Standards to reflect removals achieved by the POTW in accordance with the criteria and procedures set forth in Sections 403.7, 403.9 and 403.11."
Once again, the authority for modification here applies to modification of federally established pretreatment standards, and the request to act as the approving or denying authority comes from the federal agency which created these standards. Under the authority of the sections cited above granting the Commission authority to cooperate with federal agencies and take necessary action to satisfy the Federal Water Pollution Control Act, there is the required authority.
The authority for the Commission, to cooperate in the way envisioned by the Federal Regulations is described in those regulations in Section 403.7 wherein it is provided that the POTW is to apply for and receive the described authorization from either the Regional Administrator of EPA or the Director. Hence, the same hand that gave these pretreatment standards also gave the authority to approve or deny the request for modification of these federal standards to the Director. Were these state standards, the Commission clearly has authority to modify the standards it has established. See Sections 204.026(7), (8), (9) and (13).
In summary, considering the minimum requirements for legal authority as set forth in Section 403.10(f)(1), it is the view of this office that the Director, as the chief administrative officer for the Missouri Clean Water Commission does have the requisite minimum legal authority referred to in that section of the Federal Regulations.
Very truly yours,
 JOHN ASHCROFT Attorney General